JOURNAL ENTRY AND OPINION
{¶ 1} Gregory Taylor appeals from a judgment of conviction entered by Judge David T. Matia after a jury found him guilty of possession of drugs.[1] He claims the judge erred in admitting identification testimony without allowing him to first conduct a voir dire examination of the witness, in excluding a traffic ticket as evidence, and in imposing the maximum prison term at sentencing. We affirm the judgment in part, but vacate the sentence and remand for resentencing.
 {¶ 2} At approximately 11:45 p.m. on February 8, 2003, a 1995 Dodge Sprint struck a utility pole in the 700 block of Eddy Road in Cleveland Neighborhood residents called 911 and, because fluids started leaking from the car, removed the unconscious driver and took him to the front porch of Anthony DeLarge's home. Police Officer Daniel Finn arrived and found that the injured man on the porch had a state-issued identification card in the name of then twenty-two-year-old Gregory Taylor. Paramedics transported Taylor to the hospital and Officer Finn conducted an inventory search of the Dodge. The search of the car revealed four objects later identified as 1.23 grams of crack cocaine, $290 in cash, and two cell phones. At the hospital, police later took possession of $641 in cash that was found on Taylor's person.
 {¶ 3} Taylor was indicted on one count of drug trafficking,[2] one count of drug possession, and one count of possessing criminal tools.[3] Before trial, the State filed a supplemental witness list that named three neighborhood residents and two police officers not previously listed in its discovery responses. Taylor moved to suppress any in-court identification testimony from witnesses on the supplemental list; he claimed the witnesses had not been shown a photo array to determine their ability to identify him, and that the in-court identification would be unfairly suggestive without a prior determination of the witnesses' ability to recognize him.
 {¶ 4} At the hearing on the motion, Taylor stated that the prosecutor had informed him that none of the supplemental witnesses would be making an in-court identification, but he sought to voir dire them to ensure that they would not try to identify him. He also admitted that his motion did not contest any pretrial, out-of-court identification procedures. The judge stated the motion was moot, and did not allow Taylor to voir dire the witnesses.
 {¶ 5} At trial, neighborhood resident DeLarge testified that he was present at the accident scene, and that the driver of the Dodge was taken to the front porch of his house before police and paramedics arrived. Officer Finn, who had been named in the State's original witness list, testified that he investigated the accident, and he identified Taylor as the injured man he found on DeLarge's front porch.
 {¶ 6} Taylor objected to Officer Finn's in-court identification and moved for a mistrial, because he claimed the State violated discovery by failing to inform him that he would make such an identification. He claimed his discovery requests and his motion to suppress specifically asked for such information, that he was entitled to it, and that his defense was prejudiced because of the identification. His motion was denied.
 {¶ 7} Taylor called no witnesses and did not testify, but he sought to admit as an exhibit, a certified copy of a traffic ticket issued to him at 10:30 p.m. the same evening. The ticket identified the vehicle he was driving as a green Hyundai, and the location near the intersection of Grovewood and East 167th Street in Cleveland He contended the ticket was evidence that he was driving a different vehicle in a different part of town an hour prior to the accident and, therefore, cast doubt on any identification of him at the scene of the accident.
 {¶ 8} The State stipulated to the ticket's authenticity, but objected to its admissibility, and the judge excluded it as irrelevant. He also stated that he believed Taylor would have to testify that he received the ticket before it could be admissible.
 {¶ 9} The jury found Taylor guilty of drug possession, but it acquitted him of the trafficking and criminal tools counts. The judge denied his motion for a presentence report, imposed an eighteen-month prison term, a $500 fine, two-year operator's license suspension, costs, and post-release control. Taylor asserts four assignments of error, which are included in an appendix to this opinion.
 IN-COURT IDENTIFICATION. {¶ 10} Taylor, through two assignments, challenges the judge's failure to exclude Officer Finn's identification testimony, or to declare a mistrial because of the State's failure to disclose the content of his testimony. Taylor's brief implicates a number of issues concerning identification evidence, but he has failed to support his arguments with authority or detailed argument. He claims that the State was required, either by virtue of his discovery request[4] or his motion to suppress, to disclose the fact that the officer would identify him in court. He also apparently claims that he had a right to voir dire the officer about the reliability of his identification, even if no pretrial identification procedures were used. On the record and argument presented, these claims fail.
 {¶ 11} The United States Supreme Court has recognized that a courtroom backdrop can be a very suggestive atmosphere for a witness's initial identification of a defendant,[5] but it has not stated constitutional rules concerning the suppression of identifications during trial when no pretrial identification procedures have been used. Some courts addressing the issue have determined that, while there is no constitutional right to suppress an in-court identification that is not tainted by improper pretrial identification procedures, the judge has discretion to employ safeguards to ensure a reliable identification at trial.[6] Other courts have determined that an in-court identification is subject to the same scrutiny as a pretrial identification, and suppression is allowed if the judge determines that the identification is unreliable and unnecessarily suggestive.[7]
 {¶ 12} Although these are important issues that merit discussion in an appropriate case, we need not reach them here. Contrary to Taylor's argument, neither his discovery motion nor his motion to suppress requested notification of identification witnesses; the discovery motion sought information generally available under Crim.R. 16(B), and the motion to suppress challenged any identification that might have been made by witnesses on the supplemental list. Taylor's motion to suppress did not challenge Officer Finn, who was on the original list.
 {¶ 13} Taylor contends the State had a duty to inform him that Officer Finn would make an in-court identification, but we disagree. Contrary to his claims, he did not request notice of those individuals that would make in-court identifications, and we do not consider it an unfair surprise to learn that an officer at the scene would make an in-court identification. Taylor had to be aware that police officers observed him at the scene and, if he wished to challenge their ability to identify him, he should have done so in a pretrial motion. Such a motion could have generally challenged identifications made by officers at the scene, even if he did not know their names.
 {¶ 14} Moreover, the admission of Officer Finn's testimony did not violate constitutional standards because his identification was credible and reliable.[8] Taylor's defense relied on three pieces of evidence or suggested evidence, including: (1) the traffic ticket, which showed that he was driving a different car an hour earlier at a location four miles[9] from the scene of the accident; (2) a recording of a 911 call, which stated that the accident had apparently involved two cars; and (3) a suggestion made, during cross-examination of DeLarge, that another injured person might have been carried to another porch.
 {¶ 15} Taylor did not give notice of an alibi defense under Crim.R. 12.1, and he has not disputed the fact that he was transported to the hospital from the accident scene. Instead, his defense appears to be that he was involved in a two-car accident on Eddy Road, and that somehow he was mistaken for the driver of the Dodge. If this were the case, however, there would have been a second driverless car and a second injured victim at the accident scene, neither of which were reported by police or any of the other witnesses.
 {¶ 16} Two 911 calls were made, the first of which suggested that two cars were involved, but the second call mentioned only one car, and only one car was discovered at the scene. Therefore, even if a second car was involved in the accident, it was driven away before police arrived, and the only remaining car was the 1995 Dodge Spirit, and the only remaining accident victim was Taylor.
 {¶ 17} DeLarge testified that the man removed from the car that hit the utility pole was taken to his front porch, and Patrolman Finn testified that the man on DeLarge's porch had Taylor's identification card and was, in fact, Taylor. Again, Taylor has not claimed that he was not at the scene; apparently he contends only that he was not the man removed from the Dodge, and that he was transported to the hospital from some other porch. However, despite the suggestion of another accident victim made in cross-examination questions to DeLarge, there was no evidence that anyone other than Taylor was involved in the accident.
 {¶ 18} Under these circumstances, the judge did not abuse his discretion in finding that Taylor was not entitled to prior notice of Officer Finn's testimony, and in finding that he was not unfairly surprised or prejudiced by the in-court identification. Taylor's defense claimed a mixup between him and the driver of another car, but there was no other car or driver present to allow such a mixup to occur. Therefore, if any prejudice resulted from the officer's identification testimony, it was caused not by surprise or unfairness, but by the sheer unlikelihood of Taylor's defense. The first and second assignments are overruled.
 {¶ 19} EXCLUDED EVIDENCE.
 {¶ 20} Taylor claims the judge erred in excluding evidence that he received a traffic ticket, while driving a different car, approximately an hour before the accident. The judge excluded the exhibit as irrelevant, but Taylor claims it was probative of the fact that he was not driving the Dodge.
 {¶ 21} We again note that Taylor did not give notice of an alibi defense under Crim.R. 12.1 and, therefore, we do not view his defense as a claim that he was not present at the scene. The "second car" defense, then, must claim that Taylor was involved in a two-car accident on Eddy Road, that he was driving a car other than the Dodge Spirit, and that his car was somehow removed from the accident scene or ignored by investigators while, at the same time, he was somehow mistaken for the driver of the Dodge, who also disappeared after the accident.
 {¶ 22} Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[10] The judge has discretion to determine whether evidence is relevant[11]
and, while Taylor correctly points out that the standard for relevancy is liberal,[12] we do not find the judge abused his discretion here.
 {¶ 23} Taylor apparently attempted to establish that he was driving another car at the time of the accident and, therefore, that he was not driving the Dodge.[13] As noted, however, the difficulty with this argument is that no other car was found at the accident scene. Therefore, the fact that Taylor was driving a different car an hour earlier loses all probative value; without evidence that a second car was found at the scene, the fact that he was driving a different car an hour earlier is meaningless. As with his challenge to Officer Finn's testimony, Taylor's problem here stems from the improbability of his own defense, and not from the judge's evidentiary rulings. The third assignment is overruled.
 MAXIMUM SENTENCE {¶ 24} Taylor also challenges the judge's sentence, which imposed the maximum prison term available for a fourth degree felony. He claims the judge's findings and reasons to support the maximum sentence, as required by R.C. 2929.14(C) and2929.19(B)(2)(d), were inadequate or improper. We need not address whether the judge's determination was adequate, because we agree that it was improper.
 {¶ 25} During the sentencing hearing, the following transpired:
{¶ 26} "THE COURT: Where did you get all the money in yourpocket on the day of the accident?
 {¶ 27} (Taylor's lawyer): Excuse me one second.
 {¶ 28} Judge, Your Honor, I just instructed him not to answerthat particular question in light of, you know, theself-incrimination aspects of the case, since the case has notbeen fully resolved.
 {¶ 29} THE COURT: Well, we just tried the case to a verdict.
 {¶ 30} (Taylor's lawyer): I understand that, Your Honor.
 {¶ 31} THE COURT: He doesn't want to answer that, I find forthe record he's not showing any remorse, he's served a priorprison term, and this is his fourth adult case. Mr. Taylor, Iguarantee that you will offend again and therefore I feel that amaximum prison term in this case is necessary to protect thepublic from future crimes."
 {¶ 32} The State contends that the judge took into account Taylor's prior convictions to support the R.C. 2929.14(C) finding that he posed the greatest likelihood of committing future crimes and, therefore, merited the maximum sentence. But this colloquy also shows that the judge's sentencing decision was influenced by Taylor's refusal to respond to questioning about the money found in the car and on his person after the accident. The judge rejected Taylor's assertion of his constitutional right against self-incrimination on the grounds that the verdict had already been reached, and he found, without explanation, that Taylor's refusal to answer showed a lack of "remorse."
 {¶ 33} Regardless of whether the willingness or refusal to answer questions is evidence of a defendant's state of remorse, he retains the right against self-incrimination through sentencing,[14] and it is improper for a judge to punish a defendant for exercising a constitutional right.[15]
Moreover, judges must avoid even the appearance that sentencing decisions are tied to a defendant's exercise of constitutional rights, because such an appearance deters defendants from asserting those rights.[16] Because the issue involves a constitutional right, we can uphold the finding only if we find, beyond a reasonable doubt, that the judge would have imposed the same sentence absent the error.[17]
 {¶ 34} The colloquy shows an unavoidable juxtaposition between Taylor's refusal to answer and the judge's imposition of sentence. At the very least, a reasonable person could draw an inference, under Scalf, that the sentencing decision was related, at least in part, to Taylor's refusal to answer the question. One cannot say, beyond a reasonable doubt, that the sentencing decision was not affected by his exercise of a constitutional right. One might even say that the colloquy shows that the judge imposed a more severe sentence on Taylor because he refused to admit he committed offenses of which he had been acquitted, and that the judge intended to sentence him for the acquitted offenses.
 {¶ 35} In either case, the imposition of sentence is tainted by the judge's apparent belief that Taylor had no constitutional right to assert, and his apparent umbrage at Taylor's assertion of that right. The judge erred when he determined that Taylor did not have a constitutional right to avoid self-incrimination at sentencing, and in determining that the exercise of that constitutional right was an aggravating factor in sentencing. The fourth assignment of error is sustained.
 {¶ 36} We also note the recent United States Supreme Court decision in Blakely v. Washington which states that the "statutory maximum" is not the longest term a defendant can receive under any circumstances, but is "the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant."[18] The jury did not make a finding that Taylor posed the greatest likelihood of recidivism, nor did he admit such a thing. Although we take no position at this time concerning whether the "deliberate cruelty" finding discussed in Blakely is comparable to findings under R.C. 2929.14 (C), such issues can be raised on remand
 {¶ 37} We affirm the judgment in part, but vacate the sentence and remand for resentencing.
 APPENDIX — ASSIGNMENTS OF ERROR {¶ 38} "I. The trial court erred when it permitted the stateof ohio to present in-court identification testimony of OfficerDaniel Finn in violation of his fourth amendment and due processrights, although the defense filed a motion to suppressidentification testimony prior to trial and had no opportunity tochallenge or voir dire him.
 {¶ 39} II. The trial court erred when it denied counsel'smotion for mistrial when the prosecutor failed to disclose todefense counsel that Officer Daniel Finn could make an in-courtidentification of the appellant.
 {¶ 40} The trial court erred when it prevented the appellantfrom introducing into evidence a certified copy of a trafficticket when the state stipulated to its authenticity.
 {¶ 41} The trial court erred by imposing the maximum sentenceon appellant when express statutory factors were not found in therecord to support such a sentence."
It is ordered that appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, J., concurs (see separate concurringopinion)
Michael J. Corrigan, A.J., concurs in judgment only in partand dissents in part (see separate opinion)
[1] R.C. 2925.11(C)(4)(b).
[2] R.C. 2925.03(C)(4)(c).
[3] R.C. 2923.24.
[4] Crim.R. 16(B).
[5] Moore v. Illinois (1977), 434 U.S. 220, 229-230,98 S.Ct. 458, 54 L.Ed.2d 424.
[6] United States v. Domina (C.A. 9, 1986), 784 F.2d 1361,1368-1369; State v. Smith (1986), 200 Conn. 465, 469-470,512 A.2d 189.
[7] United States v. Hill (C.A. 6, 1992), 967 F.2d 226, 232.
[8] See Id. at 230-231 (suggestive procedures can be overlooked if identification is otherwise reliable).
[9] We can take judicial notice of street configurations.State v. Mays (1992), 83 Ohio App.3d 610, 613-614,615 N.E.2d 641.
[10] Evid.R. 401.
[11] State v. McGuire, 80 Ohio St.3d 390, 400, 1997-Ohio-335,686 N.E.2d 1112.
[12] Id.
[13] We note, yet again, that he did not assert an alibi defense.
[14] Mitchell v. United States (1999), 526 U.S. 314, 321,119 S.Ct. 1307, 143 L.Ed.2d 424.
[15] See, e.g., State v. Scalf (1998), 126 Ohio App.3d 614,620-621, 710 N.E.2d 1206 (improper to punish defendant for exercising right to trial).
[16] Id. at 621, citing United States v. Medina-Cervantes
(C.A. 9, 1982), 690 F.2d 715, 716-717.
[17] State v. Johnson, 71 Ohio St.3d 332, 339, 1994-Ohio-304,643 N.E.2d 1098.
[18] (June 24, 2004), No. 02-1632, 72 U.S.L.W. 4546.